NORTHCUTT, Judge.
Irvin Preston, Jr., petitioned for a writ of habeas corpus after the circuit court ordered him held without bond pending his trial on criminal charges. We conclude that the order was not supported by adequate proof, and we grant his petition.[1]
Preston was arrested for several offenses, including four counts of armed robbery with a firearm.[2] Armed robbery with a firearm is a first-degree felony punishable by life imprisonment. § 812.13(2)(a), Fla. Stat. (2012). The day after Preston’s arrest, he was taken for his first appearance hearing before a judicial officer, who ordered Preston held without bond pending his trial. This determination was based solely on the judge’s review of the criminal report affidavit (CRA) prepared by a police officer. The court ordered Preston held despite defense counsel’s objections that the State had not moved for pretrial detention or presented witnesses *1221 in support of it and that the CRA was an insufficient basis for ordering it.
A petition for writ of habeas corpus is the appropriate vehicle for challenging an order denying pretrial release. See Greenwood v. State, 51 So.3d 1278, 1279 (Fla. 2d DCA 2011) (holding that a petition for writ of habeas corpus is the appropriate way to challenge a trial court’s rulings on conditions of pretrial release); Rosa v. State, 21 So.3d 115, 116 (Fla. 5th DCA 2009).
The Right to Pretrial Release
In Florida, the right of an accused to obtain his or her release pending trial is grounded in article I, section 14, of the Florida Constitution. It states:
Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions. If no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained.
As stated, this provision guarantees every accused the right to pretrial release on reasonable conditions, with two exceptions. First, a person charged with a capital offense or an offense punishable by life imprisonment has no right to pretrial release if the proof of the accused’s guilt is evident or the presumption that he or she committed the crime is great. Second, any accused may be detained if no conditions of release can reasonably protect the community from physical harm to persons, ensure the accused’s presence at trial, or ensure the integrity of the judicial process.
Applicable Procedures
Procedurally, the constitutional right to bail and its qualifications most recently have been effectuated generally by a statute and two rules of criminal procedure and specifically, in regard to persons charged with capital offenses or offenses punishable by life imprisonment, by the supreme court’s decision in State v. Arthur, 390 So.2d 717 (Fla.1980). Preston’s petition for a writ of habeas corpus calls into question the interpretation of those authorities and their proper interplay.
In Arthur, the supreme court held that when seeking to deny pretrial release to an accused charged with a capital offense or one punishable by life imprisonment, the State bears the burden to show that the proof of guilt is evident or the presumption is great. 390 So.2d at 720.[3] Further, and importantly, “[s]imply to present the indictment or information is not sufficient.” Id. Rather, the court wrote,
[t]he state’s burden, in order to foreclose bail as a matter of right, is to present some further evidence which, viewed in the light most favorable to the state, would be legally sufficient to sustain a jury verdict of guilty.... The state can probably carry this burden by presenting the evidence relied upon by the *1222 grand jury or the state attorney in charging the crime. This evidence may be presented in the form of transcripts or affidavits. If, after considering the defendant’s responsive showing, the court finds that the proof is evident or the presumption great, the court then has the discretion to grant or deny bail. On this issue, the burden is on the accused to demonstrate that release on bail is appropriate. It is with regard to this question that consideration of the likelihood that the accused will flee, regardless of the sureties required, becomes appropriate.

Id.

Arthur thus established the proper construct for applying the constitution’s first exception to the right of pretrial release, applicable only when the accused is charged with a capital offense or an offense punishable by life imprisonment. On the other hand, the pertinent statute and rules of procedure appear to be directed to the second, more general, exception to the right of pretrial release, which may be applied regardless of the charge.
Section 907.041, Florida Statutes (2012), is entitled “Pretrial detention and release.” It sets forth a scheme wherein there is a presumption in favor of releasing an accused on nonmonetary conditions unless he or she is charged with a “dangerous crime” as defined in the statute or unless the court determines that monetary conditions are necessary to assure the accused’s presence at trial or other proceedings, to protect the community from the risk of physical harm, or to assure the integrity of the judicial process. As can be seen, the latter criteria essentially parrot the conditions attendant to the general exception to the right of pretrial release set forth in the constitution.
Under the statute, a person charged with a listed dangerous crime enjoys no presumption in favor of pretrial release on nonmonetary conditions. Further, he or she may be denied bail altogether and ordered to be detained pending trial if the court finds “a substantial probability” of the existence of one of seven listed circumstances, all of which relate directly or indirectly to the factors described in the constitution’s general exception to the right of pretrial release, i.e., protecting the community from physical harm, assuring the accused’s presence at trial, and insuring the integrity of the judicial process.[4] *1223 When assessing whether there is a substantial probability of one of the seven circumstances, the court may consider the defendant’s behavior patterns, the criteria in section 903.046, Florida Statutes, and any other relevant facts. § 907.041(4)(e). Section 903.046 lists required considerations applicable to bail determinations generally. Among them is “[t]he weight of the evidence against the defendant.” § 903.046(2)(b), Fla. Stat. (2012).
For purposes of the statute, offenses qualifying as dangerous crimes which may warrant pretrial detention are listed in section 907.041(4)(a).[5] Although some of the listed crimes, like homicide, could be capital offenses or punishable by life imprisonment, others are not. For example, number 18 on the list is an “[a]ct of domestic violence as defined in s. 741.28.” Under the referenced statute, domestic violence may include a simple assault or battery. § 741.28(2), Fla. Stat. (2012).
It is apparent, then, that section 907.041 is directed to the second, general, exception to the right of pretrial release set forth in article I, section 14. It does not directly implement the first exception set forth therein and construed by the supreme court in Arthur. Although the statute permits the court to order pretrial detention based in part on an assessment of the weight of the evidence against the *1224 accused, it does not require a showing that the proof of guilt is evident or the presumption great, as mandated by the constitution and Arthur in cases involving capital offenses and offenses punishable by life imprisonment. Indeed, the statute makes no reference, as such, to whether the accused is charged with such an offense.
The two relevant rules of criminal procedure also appear to effectuate only the general exception to an accused’s right to pretrial release. Florida Rules of Criminal Procedure 3.131 and 3.132 are interrelated, the former addressing pretrial release and the latter governing pretrial detention.
Rule 3.131 begins with a recitation of an accused’s right to pretrial release and its two broad exceptions, tracking the constitutional provision. It goes on to provide in subsection (b)(1) that at an accused’s first appearance, the court shall conduct a hearing to determine the conditions of pretrial release “[u]nless the state has filed a motion for pretrial detention pursuant to rule 3.132.” In turn, rule 3.132 prescribes a two-step procedure, beginning with the State’s filing of a motion seeking pretrial detention at the accused’s first appearance. Upon the filing of the motion, the court must determine whether there is probable cause to believe that the accused committed the charged offense. If so, he or she may be detained in custody pending the second step in the process, an adversarial final hearing on pretrial detention. At the final hearing, the State must prove beyond a reasonable doubt that pretrial detention is necessary under the criteria set forth in section 907.041. Fla. R. Crim. P. 3.132(c)(1).
This scheme differs from Arthur in four important ways. First, under the rule, the evidence that the accused committed the charged offense is subjected only to a probable cause determination, whereas Arthur requires an evidentiary showing that the proof of guilt is evident or the presumption great. Second, although the rule is vague on this point, it seems to contemplate that this determination may be based solely on the motion for pretrial detention itself, which must “[set] forth with particularity the grounds and the essential facts” on which it is based and “[certify] that the state attorney has received testimony under oath supporting the grounds and the essential facts alleged in the motion.” Fla. R. Crim. P. 3.132(a). On the other hand, Arthur provides that the accused may make a “responsive showing” on the question whether the proof of guilt is evident or the presumption is great. Further, the certification required in rule 3.132(a) is quite similar to that mandated by Florida Rule of Criminal Procedure 3.140(g), which states that an information must contain the prosecutor’s oath that he or she has received testimony under oath from the material witnesses. Whereas rule 3.132 seems to contemplate that a court may find probable cause and order the defendant detained based on a motion containing the required certification, Arthur held that an information containing a similar certification is insufficient to demonstrate that the proof of guilt is evident and the presumption great. Finally, if the State satisfies its burden on the issue of the weight of the evidence, under Arthur the accused has the burden to demonstrate that pretrial release is appropriate. But under rule 3.132, the burden never shifts away from the State; it must prove the need for pretrial detention beyond a reasonable doubt.
Although Arthur and the rules of criminal procedure provide for differing inquiries and burdens of proof, as a practical matter they are intertwined. Thus, an accused charged with a capital offense *1225 or one punishable by life imprisonment nevertheless is entitled to have the question of his or her pretrial release or detention determined under rules 3.1B1 and 3.132 absent an adequate showing by the State under Arthur that the proof of guilt is evident and the presumption great. For its part, when seeking to have the accused detained pretrial, the State may proceed under either of the exceptions to the constitutional right of pretrial release. It may attempt to show that under Arthur its case is sufficient to shift the burden on the appropriateness of pretrial release to the accused, or it may file a motion for pretrial detention under rule 3.132 and undertake the showings required by that rule.
The Instant Case
In Preston’s case, the State did not file a motion for pretrial detention under rule 3.132, nor did the court receive evidence sufficient to demonstrate the need for pretrial detention under that rule and section 907.041. Therefore, we must determine whether Preston’s pretrial detention was permissible under the dictates of Arthur.
As mentioned, Preston was ordered to be detained at his first appearance hearing when, after reviewing the CRA, the court found that the proof of guilt was evident and the presumption great. Preston argues in part that it was improper to detain him on that basis because no indictment or information had been filed against him. Therefore, he contends, he had not yet been “charged” with an offense punishable by death or life imprisonment. We disagree.
If, as Preston maintains, the word “charged” within the meaning of article I, section 14, requires the filing of an indictment or information, this qualification would apply not only to the court’s authority to order the pretrial detention of those charged with capital or life offenses, but also to the right of every accused to obtain pretrial release regardless of the charge. Thus, the constitution provides that “every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions.” Under Preston’s construction, no person arrested for an offense would be entitled to release before the State filed an information or indictment. This would lead to the absurdity that an accused would enjoy a greater right to liberty after the filing of an information or indictment than he or she did previously.
Not surprisingly, the rules of criminal procedure promulgated by the supreme court contemplate otherwise. Rule 3.131(b)(2) provides that the court must consider and determine the conditions of pretrial release “at the defendant’s first appearance.” Under Florida Rule of Criminal Procedure 3.130, a first appearance must be afforded within 24 hours of arrest, at which time the court “shall proceed to determine conditions of release pursuant to rule 3.131.” Fla. R. Crim. P. 3.130(a), (d). Moreover, rule 3.131(j) states that “[o]n the filing of either an indictment or information charging the commission of a crime, if the person named therein is not in custody or at large on bail for the offense charged,” the court shall issue a capias for the accused’s arrest. This provision clearly contemplates that the accused either has not been arrested on the charge or has been granted pretrial release following his or her arrest.
Preston also maintains that the first appearance court erred when it sua sponte found that the proof of guilt was evident or the presumption great without conducting an evidentiary hearing and taking testimony. We disagree that the court was required to take testimony. Arthur makes clear that the parties may make *1226 their respective showings by submitting affidavits or transcripts of sworn testimony. 390 So.2d at 720. See also Mininni v. Gillum, 477 So.2d 1013, 1014 (Fla. 2d DCA 1985) (observing that under Arthur, a court may determine that proof of guilt was evident or the presumption great on the basis of affidavits); Castro v. State, 914 So.2d 467 (Fla. 5th DCA 2005) (holding that the affidavits of the victim and a witness, along with the live testimony of the investigating officer, were sufficient to establish that the proof of guilt was evident or the presumption great that Castro committed the offense of burglary of a structure with an assault or battery); Kinson v. Carson, 409 So.2d 1212, 1212-13 (Fla. 1st DCA 1982) (holding that State carried its burden of showing that the proof of guilt was evident or the presumption great when it presented the affidavits of the victim and the arresting officer).
That said, the CRA in this case failed to establish that the proof of Preston’s guilt was evident or the presumption great. This court and others have long recognized that the level of proof necessary to meet this test is greater than that necessary to prove a defendant guilty to the exclusion of a reasonable doubt. E.g., Primm v. State, 293 So.2d 725 (Fla. 2d DCA 1974). Arthur potentially muddied this issue when it observed that the State must undertake its burden by presenting evidence that would be “legally sufficient to sustain a jury verdict of guilty.” 390 So.2d at 720. But this was not an issue before the Arthur court. The two questions presented in that case were whether a court has discretion to grant bail even when the proof of the accused’s guilt is evident or the presumption great (yes), and which party has the burden of proof on the issue (the State). When making the latter ruling, the court acknowledged that there was longstanding precedent holding that the accused bore the burden of proof. Id. at 719 (quoting Rigdon v. State, 41 Fla. 308, 26 So. 711, 712 (1899)). The court wrote that “[w]e can no longer ascribe to this procedure” and proceeded to explain why. Id.
In contrast, the AHhur court made no mention of the prior supreme court decisions holding that the “proof of guilt is evident or the presumption is great” standard is more demanding than proof to the exclusion of a reasonable doubt. This had been the law for sixty-four years, Russell v. State, 71 Fla. 236, 71 So. 27 (1916), and it remained unaltered at the time Arthur was decided. See State ex rel. Van Eeghen v. Williams, 87 So.2d 45 (Fla.1956); Deeb v. Gandy, 110 Fla. 283, 148 So. 540 (1933); State ex rel. Gobel v. Chase, 91 Fla. 10, 107 So. 921 (1926). The Arthur court did not indicate that it intended to change this entrenched rule or explain the court’s reason for doing so, and indeed that question was not at issue in the case. In light of this, the observation that the State’s proof must be legally sufficient to sustain a guilty verdict certainly must be treated as dicta. In the years since Arthur was decided, we district courts have done precisely that, and we have continued to apply the Russell standard of proof to bail issues. See Mininni, 477 So.2d at 1015; Bleiweiss v. State, 24 So.3d 1215, 1216 n. 1 (Fla. 4th DCA 2009); Whitehead v. McCampbell, 700 So.2d 135 (Fla. 4th DCA 1997); Kirkland v. Fortune, 661 So.2d 395 (Fla. 1st DCA 1995); State v. Perry, 605 So.2d 94 (Fla. 3d DCA 1992).
The CRA in Preston’s case fell well shy of the Russell standard in terms both of the quantum of its proof and of the competence of its proof. It was signed by a Tampa police officer, who swore that the statements contained in the report were true “to the best of [his] knowledge.” It did not contain the names of the victims or *1227 of any other witnesses, nor did it recite any statements attributed to them. The “Tangible Evidence” section of the CRA did indicate the existence of sworn statements recovered by “AFFIANTS” and that their present location was “EVIDENCE.” But the affidavit did not indicate who made the sworn statements, to whom the statements were made, or what was contained in them. No written statements of any kind were attached.
The facts recited in the CRA generally alleged that Preston robbed the victims while in a vehicle of a specific description and bearing a specified license plate number.[6] It did not indicate whether the license number was observed by witnesses to the crime when it was committed or was obtained by the officer (or someone else) thereafter. The affidavit did not state whether Preston’s supposed presence in the vehicle or at the scene of the crime was confirmed by eyewitnesses or whether he was simply alleged to have been present on the basis of some connection to the vehicle, which also was not specified in the affidavit. The CRA stated that Preston was taken into custody, but it did not indicate the circumstances of his arrest or whether he was with the vehicle at the time. These omissions in turn undermined the weight of the one alleged piece of evidence that circumstantially tied the vehicle to the crime, that being the discovery by the “affiants” of the victims’ belongings inside it.
Manifestly, the facts alleged to have constituted the charged crimes were vague, conclusory, and outside the personal knowledge of the officer who signed the CRA. The other facts alleged, relating to Preston’s arrest and the discovery of the victims’ property inside the vehicle, may or may not have been within the officer’s personal knowledge.[7] But even assuming that the officer himself discovered the items in the vehicle, and assuming further that the vehicle was in some way connected to Preston, these circumstances did not meet the quantum of proof necessary to deny Preston’s pretrial release. See State ex rel. Hyde v. Thursby, 184 So.2d 505 (Fla. 1st DCA 1966) (holding that circumstantial evidence of accused’s guilt that did not exclude hypotheses of innocence failed to exceed the “beyond a reasonable doubt” standard, and so was insufficient to deprive him of his right to pretrial release); Nix v. McCallister, 202 So.2d 1 (Fla. 1st DCA 1967) (same).
All in all, the CRA in this case contained little more than a recitation of broad, conclusory allegations by persons unnamed. As such, it was insufficient and incompetent to support a finding that the proof of Preston’s guilt was evident or the presumption great. Confirmation of this can be found in Arthur, which quite clearly stated that “[s]imply to present the indictment or information is not sufficient.” 390 So.2d at 720. When Arthur was decided, *1228 as now, an information was required to allege the essential facts constituting the offense charged and to include the prosecutor’s sworn statement “certifying that he or she has received testimony under oath from the material witness or witnesses for the offense.” Fla. R. Crim. P. 3.140(d)(1), (g). Thus, under Arthur, the State cannot meet its burden simply by tendering a sworn statement alleging the elements of a crime based on the sworn testimony of others. At best — and this assumes without knowing that the allegations contained in the CRA were derived from sworn statements of witnesses with personal knowledge — that is all the court relied on when ordering Preston detained without bond.
Because the CRA was insufficient in this instance to support a determination that the proof of guilt is evident or the presumption great that Preston committed the armed robberies, we set aside the first appearance court’s finding in this regard. If it has not already done so, the trial court shall determine appropriate conditions of pretrial release under rule 3.131 or, upon proper motion by the State, conduct the appropriate hearing to determine in accordance with this opinion whether Preston may be detained pursuant to rule 3.132 or Arthur. See Young v. Neumann, 770 So.2d 205 (Fla. 4th DCA 2000).
Petition granted.
WALLACE, J., Concurs.
MORRIS, J., Concurs in result only.

. Regardless of whether the circuit court has subsequently revisited the question whether Preston should be detained or granted pretrial release, the petition is not moot because the error is capable of repetition but evading review. See Greenwood v. State, 51 So.3d 1278, 1279-80 (Fla. 2d DCA 2011).

. Preston was also arrested for violating his probation in another felony case, and in all probability he has no bond in that proceeding.

. The Arthur court interpreted article I, section 14, of the constitution before its amendment in 1983. The preamendment version stated:
Until adjudged guilty, every person charged with a crime or violation of municipal or county ordinance shall be entitled to release on reasonable bail with sufficient surety unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great.
Art. I, § 14, Fla. Const. (1968).

. Section 907.04 l(4)(c) states:
The court may order pretrial detention if it finds a substantial probability, based on a defendant's past and present patterns of behavior, the criteria in s. 903.046, and any other relevant facts, that any of the following circumstances exists:
1. The defendant has previously violated conditions of release and that no further conditions of release are reasonably likely to assure the defendant’s appearance at subsequent proceedings;
2. The defendant, with the intent to obstruct the judicial process, has threatened, intimidated, or injured any victim, potential witness, juror, or judicial officer, or has attempted or conspired to do so, and that no condition of release will reasonably prevent the obstruction of the judicial process;
3. The defendant is charged with trafficking in controlled substances as defined by s. 893.135, that there is a substantial probability that the defendant has committed the offense, and that no conditions of release will reasonably assure the defendant's appearance at subsequent criminal proceedings; or
4. The defendant is charged with DUI manslaughter, as defined by s. 316. 193, and that there is a substantial probability that the defendant committed the crime and that the defendant poses a threat of harm to the community; conditions that would support a finding by the court pursuant to this subpara-graph that the defendant poses a threat of harm to the community include, but are not limited to, any of the following:
a. The defendant has previously been convicted of any crime under s. 316. 193, or of any crime in any other state or territory *1223 of the United States that is substantially similar to any crime under s. 316. 193;
b. The defendant was driving with a suspended driver’s license when the charged crime was committed; or
c. The defendant has previously been found guilty of, or has had adjudication of guilt withheld for, driving while the defendant’s driver's license was suspended or revoked in violation of s. 322.34;
5. The defendant poses the threat of harm to the community. The court may so conclude, if it finds that the defendant is presently charged with a dangerous crime, that there is a substantial probability that the defendant committed such crime, that the factual circumstances of the crime indicate a disregard for the safety of the community, and that there are no conditions of release reasonably sufficient to protect the community from the risk of physical harm to persons.
6. The defendant was on probation, parole, or other release pending completion of sentence or on pretrial release for a dangerous crime at the time the current offense was committed; or
7. The defendant has violated one or more conditions of pretrial release or bond for the offense currently before the court and the violation, in the discretion of the court, supports a finding that no conditions of release can reasonably protect the community from risk of physical harm to persons or assure the presence of the accused at trial.

.Section 907.041(4)(a) provides:
(a) As used in this subsection, "dangerous crime” means any of the following:
1. Arson;
2. Aggravated assault;
3. Aggravated battery;
4. Illegal use of explosives;
5. Child abuse or aggravated child abuse;
6. Abuse of an elderly person or disabled adult, or aggravated abuse of an elderly person or disabled adult;
7. Aircraft piracy;
8. Kidnapping;
9. Homicide;
10. Manslaughter;
11. Sexual battery;
12. Robbery;
13. Carjacking;
14. Lewd, lascivious, or indecent assault or act upon or in presence of a child under the age of 16 years;
15. Sexual activity with a child, who is 12 years of age or older but less than 18 years of age, by or at solicitation of person in familial or custodial authority;
16. Burglary of a dwelling;
17. Stalking and aggravated stalking;
18. Act of domestic violence as defined in s. 741.28;
19. Home invasion robbery;
20. Act of terrorism as defined in s. 775.30;
21. Manufacturing any substances in violation of chapter 893; and
22. Attempting or conspiring to commit any such crime.

. We discuss the allegations in generalities in light of the supreme court’s suggestion in Van Eeghen, 87 So.2d 45, that when reviewing a trial court's decision to deny bail, an appellate court should refrain from discussing the details of the evidence in order to avoid implying an assessment of the weight or sufficiency of the evidence at a subsequent trial. We note, however, that the allegations in the CRA were barely more specific than our description here.

. It is impossible to discern the extent of the officer’s personal knowledge from the CRA because it did not describe his involvement in the matter. Indeed, although one officer signed it, the CRA repeatedly referred to "affi-ants,” plural, suggesting the possibility that even the actions of the police were outside the personal knowledge of the officer himself, whose attestation stated merely that the facts alleged therein were true "to the best of [his] knowledge.”