LAGOA, J.
*969 Joel C. Adams ("Petitioner") petitions this Court for a writ of habeas corpus seeking to quash the trial court's writ of bodily attachment issued against him. We grant the petition, quash the writ of bodily attachment, and order Petitioner's release.
I. FACTUAL AND PROCEDURAL BACKGROUND
Petitioner resides in Niceville, Florida, and is the owner of NJJ Power Service, L.L.C. ("NJJ"). In the underlying proceedings, Utah Power Systems, LLC ("UPS"), filed suit against Petitioner and NJJ, and on July 10, 2017, the trial court entered final summary judgment in favor of UPS. In order to aid in the execution of the judgment, UPS served interrogatories and first requests for production on Petitioner and NJJ on October 16, 2017. On December 12, 2017, UPS obtained a writ of execution against Petitioner.
On March 1, 2018, the trial court held a "Hearing to Show Cause ... why [Petitioner and NJJ] should not be held in contempt of court for [their] failure to comply with this Court's order entered on December 19, 2017, in which the Defendants were to respond to discovery propounded by [UPS]." Petitioner did not appear at this hearing even though he was properly served. On March 6, 2018, the trial court subsequently issued a Writ of Bodily Attachment against Petitioner. In its Writ of Bodily Attachment, the trial court found that Petitioner:
individually and as representative of NJJ Power Services, L.L.C., is in willful contempt of court for failure to comply with the subpoena, served November 7, 2017, with this Court's Order to Compel Discovery Responses, entered December 19, 2017, and with the Order to Appear and Show Cause, entered February 8, 2018.
The trial court further found that Petitioner "has the ability to purge this contempt and may purge this contempt by properly responding to all outstanding discovery," and directed any authorized law enforcement personnel who took the Petitioner into custody to bring Petitioner before the court "within 48 hours of execution of the writ for a hearing to determine whether the individual wishes to purge the contempt." The Okaloosa County sheriff subsequently arrested Petitioner on April 9, 2018, and Petitioner was eventually transported to Miami-Dade County on April 26, 2018.
On April 23, 2018, Petitioner filed an "Emergency Motion to Quash Writ of Bodily Attachment and to Rescind Warrant for [Petitioner's] Arrest" (the "First Motion to Quash"). In his First Motion to Quash, Petitioner stated that he had obtained counsel and had been previously representing himself and NJJ. Petitioner alleged that: (1) on April 13, 2018, he had "made efforts to comply with [UPS's] discovery requests by faxing and filing written responses" to "[UPS's] First Requests for Admission to Defendants," filed on June 28, 2017, and to "[UPS's] Interrogatories in Aid of Execution," filed on October 16, 2017; (2) the Okaloosa County sheriff was not adhering to the trial court's order requiring Petitioner to be brought in front of the court within forty-eight hours of his detention; (3) Petitioner needed to be released from jail to properly access his computer systems in order to properly comply with pending requests for production; and (4) Petitioner had "attempted to alert the Court of his inability to attend recent hearings ... by filing letters concerning his health conditions" on March 1, 2018. Our review of the discovery responses indicates that it is unclear whether Petitioner answered UPS's discovery requests *970 in his individual capacity or as representative of NJJ, or both.
On April 27, 2018, the trial court held a specially set hearing on Petitioner's First Motion to Quash. Petitioner alleges that at this hearing, contrary to the provision in the Writ of Bodily Attachment requiring Petitioner to be brought in person to the court, the trial court proceeded with the hearing without the presence of Petitioner, who was in the process of being transported to the court from the Miami-Dade County correctional facility. At the hearing, Petitioner's counsel argued that Petitioner needed to be released in order to return to Niceville to produce any documents responsive to UPS's requests for production. The trial court denied this motion.
Then, on May 1, 2018, UPS filed an "Ex Parte Motion for Break Order" against Petitioner in order to enforce its writ of execution. The trial court granted UPS's motion, ordering the Okaloosa County sheriff to enter Petitioner's property in Niceville for the purpose of cataloging Petitioner's assets. Petitioner asserts that the Okaloosa County sheriff seized computers and cellular phones in the execution of this break order.
On May 3, 2018, Petitioner and NJJ gave notice to the trial court that "documents responsive to [UPS's] Requests for Production in Aid of Execution were served to [UPS's] counsel on May 1, 2018 via electronic mail," consisting of 504 pages in nine separate files. This notice is clear that the response to UPS's request for production is made on behalf of both Petitioner and NJJ. On May 4, 2018, Petitioner filed a third[1] "Emergency Motion to Quash Writ of Bodily Attachment and to Rescind Warrant for Defendant's Arrest" (the "Third Motion to Quash"), alleging that Petitioner had "responded to all outstanding discovery requests through the above response, document production and with the aid of the Sheriff of Okaloosa" required to purge Petitioner's contempt. Then, on May 23, 2018, Petitioner filed a fourth "Emergency Motion to Quash Writ of Bodily Attachment and to Rescind Warrant for Defendant's Arrest" (the "Fourth Motion to Quash"), notifying the trial court he had sought Chapter 7 bankruptcy relief and again alleging he had complied with all of UPS's discovery requests.
On May 25, 2018, the trial court, without a hearing, entered an "Order Denying [Petitioner's] Fourth Emergency Motion to Quash," finding that Petitioner, as representative of NJJ, had not purged contempt as "NJJ has failed to properly respond to all outstanding discovery" and that the automatic stay entered pursuant to Petitioner's bankruptcy did not apply as to Petitioner in his capacity as representative of NJJ. The trial court ordered NJJ to not file any further motions to quash until NJJ cured the purge provision in the Writ of Bodily Attachment or demonstrated its inability to comply with the purge provision. The trial court specifically noted that its order did not apply to Petitioner in his individual capacity.
Subsequently, on June 3, 2018, Petitioner filed a petition for writ of habeas corpus with this Court, as well as his own sworn affidavit dated June 1, 2018. On June 4, 2018, this Court ordered Miami-Dade Corrections to immediately release Petitioner with an opinion to follow. Following Petitioner's release, the trial court entered another Writ of Bodily Attachment dated September 6, 2018, against Petitioner, "as agent and representative of NJJ." In the September 6, 2018 writ, the trial court *971 stated that Petitioner may purge the contempt "by complying with all outstanding discovery" detailed in an email on May 3, 2018, from UPS's counsel to Petitioner's counsel. On September 14, 2018, Petitioner filed an "Emergency Motion to Quash Writs of Bodily Attachment" with this Court. We treat Petitioner's emergency motion as being filed on behalf of both himself individually and NJJ, and for the reasons stated herein, we quash both the March 6, 2018 writ of bodily attachment and the September 6, 2018, writ of bodily attachment and order Petitioner's immediate release from jail, if he is again incarcerated.
II. ANALYSIS
Florida Rule of Civil Procedure 1.380 delineates "the procedures for a party to obtain an order compelling discovery and the sanctions available for a party's failure to comply with such an order." Channel Components, Inc. v. Am. II Elecs., Inc., 915 So.2d 1278, 1282 (Fla. 2d DCA 2005). Under rule 1.380(b)(2), if a party does not obey an order to provide discovery, the trial court may enter:
(A) An order that the matters regarding which the questions were asked or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.
(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.
(C) An order striking out pleadings or parts of them or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part of it, or rendering a judgment by default against the disobedient party.
(D) Instead of any of the foregoing orders or in addition to them, an order treating as a contempt of court the failure to obey any orders except an order to submit to an examination made pursuant to rule 1.360(a)(1)(B) or subdivision (a)(2) of this rule.
(E) When a party has failed to comply with an order under rule 1.360(a)(1)(B) requiring that party to produce another for examination, the orders listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows the inability to produce the person for examination.
The issue before us involves the entry of a civil contempt order against Petitioner. "Because the trial court treated the violation of the discovery orders as a contempt of court, the trial court was required to comply with the procedural safeguards necessary to enter such a contempt order." Channel Components, 915 So.2d at 1283. Indeed, "[i]f the purpose of the proceedings is to coerce action or non-action by a party, the order of contempt is characterized as civil." Pugliese v. Pugliese, 347 So.2d 422, 424 (Fla. 1977) ; see also Channel, 915 So.2d at 1283 ("[A] contempt sanction is considered civil if it is remedial, and for the benefit of the complainant." (quoting Parisi v. Broward County, 769 So.2d 359, 364 (Fla. 2000) ) ). However,
where a party is being sanctioned for civil contempt for failing to abide by a court order, that person must "carr[y] the key to his cell in his own pocket." Put another way, a party held in civil contempt and ordered to comply with a court order must be able to do so-that is, the party must have the ability to comply.
Ross Dress for Less Va., Inc. v. Castro, 134 So.3d 511, 523 (Fla. 3d DCA 2014) (citations omitted) (quoting Pugliese, 347 So.2d at 424 ). Significantly, "the key safeguard *972 in civil contempt proceedings is a finding by the trial court that the contemnor has the ability to purge the contempt." Parisi, 769 So.2d at 365 ; accord Channel Components, 915 So.2d at 1283.
In its order denying Petitioner's Fourth Motion to Quash, the trial court did not make an affirmative finding that at that time it issued the order, Petitioner, as representative of NJJ, had the continued ability to purge his contempt despite the allegations in the motion stating he had complied with all of UPS's outstanding discovery requests required to purge. Cf. Janeski v. Janeska, 974 So.2d 1220, 1222 (Fla. 2d DCA 2008) (reversing a writ of bodily attachment where "the trial court simply relied on its prior findings and its prior purge amount and presumed the former husband continued to have 'the present ability to pay' that amount"). Notably, the order only states that "NJJ has failed to properly respond to all outstanding discovery." Moreover, the trial court's order does not state with specificity what further actions NJJ must take to purge the contempt. See, e.g., Marconi v. Walther, 819 So.2d 936, 938 (Fla. 2d DCA 2002) ; see also Stanton v. Stanton, 50 So.3d 1143, 1143 (Fla. 2d DCA 2010) ("A new order should take into account any discovery provided by the Husband following the November 4 judgment. Such an order shall make explicit on its face what materials the Husband must provide to the Wife in order purge the contempt."); Lanza v. Lanza, 804 So.2d 408, 409 (Fla. 4th DCA 2001) ("A civil contempt order must contain a specific purge provision that adequately informs the contemnor what he or she must do to purge the contempt."). We note that it is unclear from the record in which capacity Petitioner was acting in when responding to UPS's discovery requests.
Additionally, the trial court was required to hold a hearing before denying Petitioner's Fourth Motion to Quash because the trial court never held an initial hearing on whether Petitioner violated his discovery obligations and had the present ability to purge before holding him in civil contempt. See Marconi, 819 So.2d at 938 ("A person charged with civil contempt is entitled to an opportunity to be heard."); Bargiel v. Colt Studio, Inc., 901 So.2d 315, 317 (Fla. 4th DCA 2005) (noting that in civil contempt proceedings, "[p]etitioner was entitled to an evidentiary hearing at which the witnesses were sworn and any other evidence presented was duly verified"); see also Cook v. Navarro, 611 So.2d 47, 47 (Fla. 4th DCA 1992) ("Appellant is entitled to a hearing where he has the opportunity to demonstrate that he does not have the ability to pay the substantial purge amount."). Petitioner asserted in his Fourth Motion to Quash that he had complied with all discovery requests on behalf of himself individually and as representative of NJJ or that he did not have the present ability to purge the contempt, and Petitioner had no opportunity to present evidence or testimony to support the allegations in his motion.[2] We further note that nothing has changed to warrant the trial court issuing another writ of bodily attachment against Petitioner. No evidence has been adduced that further documents or discovery responses exist and are being withheld by the Petitioner. Moreover, Petitioner *973 was incarcerated for about two months without the benefit of personally appearing before the trial court in order to be heard and address the purge provisions of the writ. "[I]ncarceration cannot be imposed upon a civil contemnor for willfully failing to comply with a court order unless the court first determines that the contemnor has the present ability to purge himself of contempt." Bowen v. Bowen, 471 So. 2d 1274, 1278 (Fla. 1985). Here, no such finding was made nor could it have been made, as the trial court proceeded to hold a hearing without the presence of the Petitioner while he was being transported from the Miami-Dade County correctional facility to the courthouse.
III. CONCLUSION
Accordingly, we grant Petitioner's petition for writ of habeas corpus. We also grant Petitioner's September 14, 2018, emergency motion to quash the writ of bodily attachment dated September 6, 2018, and order Petitioner's immediate release from jail.[3] This opinion shall take effect immediately notwithstanding the filing of any post-opinion motions, and the mandate shall issue immediately.
Petition for writ of habeas corpus granted and Emergency Motion to Quash Writs of Bodily Attachment granted; writs quashed.

Our review of the lower court docket reveals that a second motion to quash was filed on May 1, 2018. This motion, however, was not provided to this Court for review.

We are further troubled by the fact that (1) Petitioner was incarcerated for eighteen days prior to any hearing before the trial court, and (2) the trial court proceeded with the specially set hearing without Petitioner's presence , when Petitioner was being transported to the court by Miami-Dade County corrections. These actions were in direct contravention of the orders in the Writ of Bodily Attachment, which explicitly states that Petitioner is to be brought "before the undersigned judge within 48 hours of execution of the writ for a hearing to determine whether the individual wishes to purge the contempt."

We further note that on September 10, 2018, the trial court issued a writ of bodily attachment against Nina Roberts Adams, Petitioner's wife, in her capacity as "agent and representative of NJJ" for failing to comply with the same motion to compel outstanding discovery responses from NJJ. As the September 10, 2018 writ of bodily attachment possesses the same legal infirmities as the writs of bodily attachment against Petitioner discussed in this opinion, we quash the trial court's September 10, 2018 writ against Nina Robert Adams and order her immediate release from jail if she has already been detained.