# Third District Court of Appeal
## State of Florida

Opinion filed September 12, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-1258
Lower Tribunal Nos. F25-2125C, F25-459

_____

## India Comer and Shantearia Gaines,
Petitioners,

vs.

## State of Florida, et al.,
Respondents.


A Case of Original Jurisdiction – Habeas Corpus.


Carlos J. Martinez, Public Defender, and John Eddy Morrison, Assistant Public Defender, for petitioners.

James Uthmeier, Attorney General, and Linda S. Katz, Assistant Attorney General, for respondent State of Florida.

Geraldine Bonzon Keenan, Miami-Dade County Attorney, and Shanika A. Graves, Assistant County Attorney, for respondent Miami-Dade County.


Before SCALES, C.J., and EMAS, and GOODEN, JJ.

GOODEN, J.

Petitioners India Comer and Shantearia Gaines have petitioned this Court for a writ of habeas corpus. For the reasons set forth below, we grant the petition and issue the writ.

**I.**

This case concerns two female juveniles who have been charged as adults and are being held for pretrial detention. India Comer is seventeen years old and charged with attempted first-degree murder, aggravated assault with a firearm, and possession of a firearm by a juvenile delinquent. Shantearia Gaines is fifteen years old and charged with second-degree murder.

Florida law requires minors to be separately housed from adult inmates to prevent regular contact. See § 985.265(5), Fla. Stat. (2025). Miami-Dade Corrections and Rehabilitation Department has a separate unit for male juveniles, but not for female juveniles. As a result, the Petitioners are currently housed in Turner Guilford Knight Correctional Center—an adult jail—in its Mental Health Treatment Ward.[1] But neither Petitioner is housed there for treatment of a mental illness.

---

[1] Gaines has been housed there since January 9, 2025, and Comer since April 1, 2025.

Both Petitioners moved for pretrial release, or in the alternative, for vacatur of the order transferring them to Turner Guilford Knight Correctional Center, allowing them to be returned to the juvenile facility. As the Petitioners argued, their pretrial detention at Turner Guilford Knight Correctional Center is illegal under section 985.265(5), Florida Statutes. They maintained that their confinement has not been sufficiently separate from adult inmates as required.

Two trial courts separately denied the motions without an evidentiary hearing. Both judges focused on the statute not providing a remedy and noted that the Petitioners could sue Miami-Dade County to force compliance with the statute. The Petitioners timely petitioned our Court.

Since a factual dispute existed, we appointed the Honorable Christine Hernandez as a commissioner to determine whether "the location and manner in which the minors are housed in the adult jail fails to comply with, and violates the requirements of, section 985.265(5), Florida Statutes." Comer v. State, No. 3D25-1258, 2025 WL 2055713, at *1 (Fla. 3d DCA July 23, 2025). She held an evidentiary hearing over two days, took evidence, and heard testimony from six witnesses. She also conducted an in-person visit to the facility, along with the attorneys involved in the case.

Based on the testimony, evidence, and her own observations, Judge Hernandez produced a lengthy report and numerous findings. Ultimately, she determined: "The location and manner in which the Petitioners are housed in the adult jail facility (TGK) render having regular contact with incarcerated adults and trustees[2] unavoidable. This regular contact, as prohibited by Fla. Stat. 985.265[5](b), is not merely haphazard or accident." The Court accepts the report.

**A.**

To put the facility into context, the female Mental Health Treatment Ward is a two-tiered structure with cells around both tiers which face a central open area. The Petitioners are housed in cells in a corner of the upper tier. The clear glass windows in the cell doors are large, making the interior of the cell easily visible. The trusties regularly and routinely are outside the cells delivering food and cleaning. The trusties have enough regular contact with the Petitioners that they know their names and vice versa.

---

[2] A trusty is an inmate that is given special privileges due to good behavior. He or she generally assists with daily operations of the prison. This can include activities such as maintenance, cooking, and cleaning. See generally Ursin v. Law Enf't Ins. Co., Ltd., 450 So. 2d 1282, 1283 (Fla. 2d DCA 1984); United States v. Ragsdale, 438 F.2d 21, 22 (5th Cir. 1971); Stroman v. Griffin, 331 F. Supp. 226, 228 (S.D. Ga. 1971).

These cells are not soundproof and the Petitioners can hear the adults in the surrounding cells. Since this ward houses inmates suffering from mental illness, these individuals are often yelling, screaming, or pounding on their cell doors or walls. The sounds are persistent and loud. It vibrates throughout the building. This is the normal soundscape in this ward.

There is a TV mounted on the wall outside the Petitioners' cells. This is where the Petitioners receive school lessons, play video games, and watch television. From this area, they can see, and be seen from, other cells.

The showers are on the second tier and have clear glass doors. They are located outside of the Petitioners' area and directly across from the adult female cells. As a result, the Petitioners must leave their area and walk along the catwalk to that section. The adult inmates see and speak to the Petitioners as they pass. Unless a partition[3] is placed in front of the showers, the Petitioners can be seen by others while showering. The Petitioners can hear the other inmates while in the shower area.

There also is a recreational yard.[4] When the Petitioners visit the yard, they must leave their area, walk along the catwalk, down the stairs, and

---

[3] According to Petitioner Comer, a partition was not put in place until August 10, 2025.

[4] Gaines has met with her attorney in the recreational yard on several occasions.

through the open area, seen by all. The other inmates try to speak with them. The recreational yard has a large window that overlooks the main area of the facility. This window permits an occupant of the recreational yard to see into the facility. So, adult inmates and cells are plainly visible. On several occasions, the door separating the two areas has been propped open. When that occurs, those in the recreational yard can hear the noise in the main area.

In addition to the shower and recreational yard, the Petitioners also leave their area to make video calls, visit the commissary, attend physical therapy, and attend court. This requires passing by adult cells. When the Petitioners pass adult cells, the other inmates try to speak with them and sometimes yell at them.

## II.

First, we must resolve whether a petition for writ of habeas corpus is the proper vehicle. The County contends it is not.

"The text of our Florida Constitution begins with a Declaration of Rights—a series of rights so basic that the framers of our Constitution accorded them a place of special privilege." Traylor v. State, 596 So. 2d 957, 963 (Fla. 1992). "They protect each individual within our borders from the

6

unjust encroachment of state authority—from whatever official source—into his or her life." Id. The writ of habeas corpus is one such fundamental right. Art. I, § 13, Fla. Const. ("The writ of habeas corpus shall be grantable of right, freely and without cost. It shall be returnable without delay . . . ."); Haile v. Gardner, 91 So. 376, 378 (Fla. 1921) ("The writ of habeas corpus is a writ of right when a showing is duly made entitling a party to the use of the writ . . . .").

Indeed, it is "one of the most important and protected legal rights in both United States and Florida jurisprudence." Jones v. Fla. Parole Comm'n, 48 So. 3d 704, 710 (Fla. 2010). Due to its importance, some of Florida's oldest laws concern procedures for writs of habeas corpus. See Fla. Terr. Acts 1822, § 1–11; Ch. 3129, § 1-11, at 68-71, Laws of Fla. (1879).

But the writ of habeas corpus is much more than a constitutional command. It "has its origins in antiquity and its parameters have been shaped by suffering and deprivation." Jamason v. State, 447 So. 2d 892, 894 (Fla. 4th DCA 1983), approved, 455 So. 2d 380 (Fla. 1984). "[I]t is a writ of ancient right." Id. Some trace it back to the English common law and the Magna Carta. See Magna Carta, Art. 39 (1215) ("No free man is to be arrested, or imprisoned, or disseised, or outlawed, or exiled, or in any other way ruined, nor will we go against him or send against him, except by the

lawful judgment of his peers or by the law of the land."); Petition of Right, 1628, 3 Car. I ci (1628); Habeas Corpus Act, 31 Car. 2, ch. 2 (1679); Bill of Rights, 1 William & Mary c2 (1689); 1 Williams Blackstone, Commentaries on the Laws of England 131–33 (1765); 3 William Blackstone, Commentaries on the Laws of England 328–29 (1765).  Others to Roman Law.  See Albert S. Glass, Historical Aspects of Habeas Corpus, 9 St. John's L. Rev. 55, 56 (1934) (explaining that the writ of habeas corpus is like the Praetorian Interdict of the Roman Civil Law "*de homine libero exhibendo*," through which if the praetor found that a freeman was restrained of his liberty contrary to good faith, he would order that man to be liberated).  "By the time the American Colonies achieved independence, the use of habeas corpus to secure release from unlawful physical confinement, whether judicially imposed or not, was thus an integral part of our common-law heritage." Preiser v. Rodriguez, 411 U.S. 475, 485 (1973).[5]  See also The Federalist No. 84 (Alexander Hamilton); Ex parte Bollman, 8 U.S. 75, 85 (1807).

"The writ of habeas corpus is a high prerogative writ, and, when properly issued, supersedes all other writs."  State v. Browne, 142 So. 247, 248 (Fla. 1932).  At its core, the writ is to secure liberty.  See generally Art.

---

[5] Florida adopted the English common law as its own in 1822.  See Fla. Terr. Acts 1822, p. 50.  See also Fla. Terr. Acts 1823, p. 111; § 2.01, Fla. Stat. (1829).

I, § 2, Fla. Const. ("All natural persons, female and male alike, are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness . . . ."); Art. I, § 9, Fla. Const. ("No person shall be deprived of life, liberty or property without due process of law . . . ."); Hamdi v. Rumsfeld, 542 U.S. 507, 554–55 (2004) (Scalia. J., dissenting) ("The very core of liberty secured by our Anglo–Saxon system of separated powers has been freedom from indefinite imprisonment at the will of the Executive.").  The writ is "freely grantable of right to those unlawfully deprived of their liberty in any degree." State v. Bolyea, 520 So. 2d 562, 564 (Fla. 1988).  "The writ is venerated by all free and liberty loving people and recognized as a fundamental guaranty and protection of their right of liberty." Allison v. Baker, 11 So. 2d 578, 579 (Fla. 1943).

"The purpose of a habeas corpus proceeding is to inquire into the legality of the petitioner's present detention." Sneed v. Mayo, 69 So. 2d 653, 654 (Fla. 1954).  See also McCrae v. Wainwright, 439 So. 2d 868, 870 (Fla. 1983); Shelton v. Coleman, 187 So. 266, 270 (Fla. 1939); Ex parte Amos, 112 So. 289, 292 (Fla. 1927); State v. Logan, 100 So. 173, 173 (Fla. 1924). It is "not to challenge the judicial action that places a petitioner in jail; rather, it challenges the detention itself." Jones, 48 So. 3d at 710.  Accord Fennell v. Felton, 655 So. 2d 1316, 1318 (Fla. 3d DCA 1995) ("The office and

9

function of a writ of habeas corpus is to make a precise and definitive inquiry as to whether one's liberty is legally restrained.").

While many of its uses have been supplanted by post-conviction motions, the writ still applies where Rule 3 relief is not otherwise available. Fla. R. Crim. P. 3.850(m).  Examples include:

- Challenging an order denying pretrial release.  See Alcazar v. State, 349 So. 3d 930, 932 (Fla. 3d DCA 2022); Preston v. Gee, 133 So. 3d 1218, 1221 (Fla. 2d DCA 2014); Buss v. Reichman, 53 So. 3d 339, 344 (Fla. 4th DCA 2011).

- Challenging reasonableness of the amount of bail.  See State ex rel. Scaldeferri v. Sandstrom, 285 So. 2d 409, 412 (Fla. 1973); Robinson v. State, 95 So. 3d 437, 438 (Fla. 5th DCA 2012).

- Challenging other conditions of pretrial release.  See Miranda v. Reyes, 359 So. 3d 381, 383 (Fla. 3d DCA 2023).

- Seeking release from a close management housing classification. See Banks v. Jones, 232 So. 3d 963, 966 (Fla. 2017); Owens v. Dep't of Corrs., 283 So. 3d 440, 441 (Fla. 3d DCA 2019).

- Contesting the validity of custody for contempt.  See Adams v. Utah Power Sys., LLC, 255 So. 3d 968, 971–72 (Fla. 3d DCA 2018); Charlemagne v. Guevara, 183 So. 3d 1261, 1263 (Fla. 3d DCA

10

2016); <u>Durant v. Boone</u>, 509 So. 2d 1275, 1276 (Fla. 1st DCA 1987).

- Obtaining custody of a child being wrongfully withheld. <u>See</u> <u>Crane v. Hayes</u>, 253 So. 2d 435, 440 (Fla. 1971).

- Addressing the legality of a juvenile's detention. <u>See</u> <u>N.H. v. State</u>, 358 So. 3d 477, 480 (Fla. 5th DCA 2023); <u>N.W. v. State</u>, 300 So. 3d 803, 804 (Fla. 1st DCA 2020).

At bottom, a petition for writ of habeas corpus is about securing liberty when it has been unlawfully deprived. <u>See</u> <u>Anglin v. Mayo</u>, 88 So. 2d 918, 919 (Fla. 1956); <u>McLeod v. Chase</u>, 116 So. 858, 859 (Fla. 1928); <u>Porter v. Porter</u>, 53 So. 546, 547 (Fla. 1910).

## A.

Turning to this case, the County claims that the petition is only about the conditions of the jail[6]—not the legality of the detention. It maintains that the Petitioners are simply trying to change the conditions of the jail.

---

[6] But "[c]onfinement contrary to constitutional principles of due process may be the subject of habeas corpus relief." <u>Pompey v. Cochran</u>, 685 So. 2d 1007, 1010 (Fla. 4th DCA 1997). For example, a petition for writ of habeas corpus can be the appropriate vehicle to address conditions of confinement where it constitutes cruel and unusual punishment. <u>See, e.g.</u>, <u>Lowery v. Broward Cnty. Sheriff</u>, 742 So. 2d 389, 390 (Fla. 4th DCA 1999); <u>Van Poyck v. Dugger</u>, 579 So. 2d 346, 347 (Fla. 1st DCA 1991). However, the Petitioners do not allege cruel and unusual punishment.

But that is wrong. Instead, the Petitioners are seeking to be released from their confinement that does not comply with the statutory requirements of their detention as minors. Indeed, they are testing the legality of their detention in this specific facility. See State, Dep't. of Health & Rehab. Servs. v. Stoutamire, 602 So. 2d 564, 567 (Fla. 2d DCA 1992).

Florida law dictates how minors must be detained and housed when they are charged as adults:

(5) The court shall order the delivery of a child to a jail or other facility intended or used for the detention of adults:

(a) When the child has been transferred or indicted for criminal prosecution as an adult under part X, except that the court may not order or allow a child alleged to have committed a misdemeanor who is being transferred for criminal prosecution pursuant to either s. 985.556 or s. 985.557 to be detained or held in a jail or other facility intended or used for the detention of adults; however, such child may be held temporarily in a detention facility; or

(b) When a child taken into custody in this state is wanted by another jurisdiction for prosecution as an adult.

The child shall be housed separately from adult inmates to prohibit a child from having regular contact with incarcerated adults, including trusties. "Regular contact" means sight and sound contact. Separation of children from adults shall permit no more than haphazard or accidental contact. The receiving jail or other facility shall contain a separate section for children and shall have an adequate staff to supervise and monitor the child's activities at all times. Supervision and monitoring of children includes physical observation and documented checks by jail or receiving facility supervisory personnel at intervals not to exceed 10 minutes. This subsection does not prohibit placing two or

12

more children in the same cell. Under no circumstances shall a child be placed in the same cell with an adult.

§ 985.265(5), Fla. Stat.[7] This guarantees minors the liberty not to be housed alongside adults and not to have regular contact with adults.

But the location and the way the Petitioners are housed falls short of ensuring this liberty. It forces them to have regular contact—*both sight and sound contact*—with adult inmates. This contact is not accidental or haphazard. This is prohibited by section 985.265(5), Florida Statutes. To this end, the Petitioners' detention is unlawful. Their statutory rights—and importantly, their liberties—are being deprived. See Bolyea, 520 So. 2d at 564.

While Courts cannot micromanage the facility to demand certain condition changes, it can ensure that the statutory rights of minors are met. Minors must be detained and housed in accordance with Florida law. Those requirements are set forth by the plain language of section 985.265, Florida Statutes. Our constitutional guaranties of liberty are merely empty words

---

[7] One of the stated purposes of Chapter 985 is to "[t]o assure that the sentencing and placement of a child tried as an adult be appropriate and in keeping with the seriousness of the offense and the child's need for rehabilitative services, and that the proceedings and procedures applicable to such sentencing and placement be applied within the full framework of constitutional standards of fundamental fairness and due process." § 985.01(f)(2), Fla. Stat. (2025).

unless a person imprisoned or detained may challenge the legality of detention.

For this reason, the petition for habeas corpus is granted and the writ issued. If the Petitioners have not been transferred as of this opinion, the trial court shall order the Petitioners to be immediately transferred to the juvenile facility to be held temporarily while awaiting placement in a facility that meets the requirements of section 985.265(5), Florida Statutes. See D. J. B. v. Seeber, 239 So. 3d 652, 652 (Fla. 2d DCA 2017); F.L.B. v. State, 46 So. 3d 1006, 1006 (Fla. 2d DCA 2010).

We thank Judge Hernandez for her assistance and considerable effort in this matter. We commend her for her thorough and informative report.

Petition granted; Writ issued.